## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FRANKLIN ARMIJO,

                    Plaintiff,

v.

                                                            No. 14-cv-610 RB/WPL

VALERIE PACHECO,

                    Defendant.

### MEMORANDUM OPINION AND ORDER

Plaintiff Franklin Armijo claims he was unlawfully arrested after purchasing a squash blossom necklace at a pawn shop.   He sued Defendant Detective Valerie Pacheco for violating his constitutional and state rights.   The parties filed cross motions for summary judgment.   Having reviewed the parties' submissions and arguments, the Court **DENIES** Mr. Armijo's motion while the Court **DENIES** Detective Pacheco's motion in part and **GRANTS** the motion in part.

### I.  BACKGROUND

On June 12, 2013, Mr. Armijo purchased a squash blossom necklace from University Pawn, a pawn shop in Albuquerque, New Mexico.   (Pl. Ex. 1.)   No one questions the legality of this purchase: according to the receipt, Mr. Armijo paid $321.00 including tax for the necklace. (*Id.*; Pacheco Dep. 49:6-14, Doc. 49-2.)   Later, Mr. Armijo decided to resell the necklace. (Armijo Dep. 18:7-14, Doc. 48-1.)   Mr. Armijo, who worked at a second pawn shop called Pawn City, asked his boss if he could try to sell the necklace at the store.   (*Id.* 13:10-12, 18:7-14.) Apparently, Pawn City had a sizeable clientele interested in Indian jewelry, which Mr. Armijo thought would help him sell the piece.   (*Id.* 18:7-14.)

In mid-June, a woman named Amy Larsen came into Pawn City asking to see Indian jewelry.   (Armijo Dep. 22:11-23:11, Doc. 48-1.)   Armijo, who was working at the time, offered

to show her Pawn City's inventory as well as his "personal" squash blossom necklace.  (*Id.* 22:18-23:11.)   After looking at Mr. Armijo's squash blossom necklace, Ms. Larsen claimed it was hers.  (*Id.* 23:13-24:1.)   An acquaintance of Ms. Larsen's had stolen several of her possessions, including a squash blossom necklace.  (Larsen Dep. 24:3-7.)   Ms. Larsen was trolling pawn shops hoping to recover her jewelry.  (Pacheco Dep. 38:25-39:10, Doc. 48-9.)   At first, Mr. Armijo flatly denied Ms. Larsen's allegation.   (Armijo Dep. 23:13-24:1, Doc. 48-1.)

Ms. Larsen called the Albuquerque Police Department and showed Mr. Armijo pictures of herself wearing a squash blossom necklace.  (*Id.* 24:18-19.)   Although Mr. Armijo had doubts that his squash blossom necklace matched the necklace in the pictures, he took Ms. Larsen's claim seriously.  (*Id.* 24:20-25:12, 58:11-59:8.)   He admitted that he had purchased the necklace from University Pawn and informed the police officer who arrived that he wanted Ms. Larsen to have the necklace "[i]f it's rightfully hers."  (*Id.* 25:2-12.)   Because Mr. Armijo had proof of purchase for the necklace, the police officer determined that he could not simply "take it away."  (*Id.* 25:21-24.)   The officer advised Ms. Larsen to get in touch with the pawn unit of the Albuquerque Police Department.  (*Id.* 25:24-26:3.)   Mr. Armijo was allowed to keep the necklace he had purchased.  (*Id.* 26:3.)

The next day, Detective Pacheco, a detective with the Albuquerque Police Department's pawn unit, called Mr. Armijo at Pawn City.  (*Id.* 8:7-29, 29:1-2; Doc. 48 at 2.)   Detective Pacheco told Mr. Armijo to put the necklace on "police hold."  (Armijo Dep. 28:7-29, Doc. 48-1.)   Mr. Armijo had never heard of a police hold before and asked his boss what it meant.  (*Id.* 29:17-22.)   Based on his boss's suggestion, Mr. Armijo removed the necklace from its display and put it in Pawn City's safe.  (*Id.* 29:20-23.)   Mr. Armijo did not hear back from Detective Pacheco for weeks.  (*Id.* 55:16-25.)

Over a month later, in late July, Mr. Armijo quit his job at Pawn City.   (*Id.* 30:21-31:1.)
Before leaving, Mr. Armijo asked his boss for permission to take the squash blossom necklace
home.   (*Id.* 54:10-15.)   He asked his boss how long police holds last.   (*Id.* 54:17-20.)   His boss
informed him that he generally keeps items on police hold for thirty days and then puts them out
for sale again.   (*Id.* 54:20-22.)   Because more than thirty days had passed, Mr. Armijo and his
boss decided it was acceptable to move the squash blossom necklace.   (*Id.* 54:22-55:5.)   Mr.
Armijo did not try to resell the necklace; instead he brought it home for his wife.   (*Id.* 55:8-15.)

On August 6, 2013, Detective Pacheco called Pawn City to check on the squash blossom
necklace.   (Pacheco Dep. 55:8-11, Doc. 48-9.)   At this point, almost two months had passed
since Detective Pacheco first put the necklace on hold.   (*Id.* 45:3-15.)   Detective Pacheco waited
two months to follow up because she was working on several different cases and also took time off
for vacation.   (*Id.* 55:15-19.)   The owner of Pawn City informed Detective Pacheco that Mr.
Armijo had left his employment at the pawn shop and had taken his property, including the squash
blossom necklace, with him.   (*Id.* 55:23-56:18.)

Detective Pacheco called Mr. Armijo to ask where "her" necklace was.   (Armijo Dep.
56:2-12, Doc. 48-1.)   In response, Mr. Armijo reasserted his claim to ownership of the necklace.
(*Id.*)   Mr. Armijo confirmed that he had the necklace and said he thought the police hold was
finished.   (*Id.* 56:12-15.)   For the first time, Detective Pacheco informed him that police holds
"can last indefinitely" and could "last for the rest of your life."   (*Id.* 56:17-20.)   Detective
Pacheco demanded that Mr. Armijo go to the downtown police station and turn in the necklace.
(*Id.* 57:10-17.)   She warned Mr. Armijo that if he did not turn in the necklace, she would issue an
arrest warrant for him.   (*Id.* 57:14-17.)   When Mr. Armijo asked how he could recover the $300

he paid for the necklace, Detective Pacheco responded, "That's something you're going to have to take up with somebody else.   That's not my business."   (*Id.* 57:3-9.)

Mr. Armijo told this story to his current employer, an attorney at the Western States Law Group.   (*Id.* 65:20-22.)   Attorney Dana Grubesic contacted Detective Pacheco and attempted to renegotiate the terms of the property transfer: Ms. Grubesic requested that the detective come to the office to pick up the squash blossom necklace.   (*Id.* 65:21-66:2.)   Although Mr. Armijo could not hear the full phone conversation, Mr. Armijo recalls hearing Detective Pacheco yelling on the other end of the line.   (*Id.* 67:19-68:17.)   Repeatedly, Ms. Grubesic, asked whether Mr. Armijo was under arrest.   (*Id.* 66:7-12, 68:19.)   Detective Pacheco responded that there was no arrest warrant currently, but that she would arrest Mr. Armijo if he did not bring the necklace.   (*Id.* 68:19-22.)   Eventually, Ms. Grubesic quit negotiating and agreed that Mr. Armijo would go to the police station.   (*Id.* 69:2-6.)

As requested, Mr. Armijo arrived at the downtown police station early the next morning. (*Id.* 62:13-22.)   Mr. Armijo handed Detective Pacheco the squash blossom necklace and turned to leave.   (*Id.* 62:24-25.)   Instead of allowing Mr. Armijo to leave, Detective Pacheco placed him under arrest.   (*Id.* 62:25-63:3.)   A second police officer handcuffed Mr. Armijo, patted him down, and removed the possessions in Mr. Armijo's pockets.   (*Id.* 63:4-64:8.)   Next, Detective Pacheco placed Mr. Armijo in a small plastic chair near her desk for two to three hours while she typed her police report.   (*Id.* 64:18-25; Def. Ans. to Interrog. No. 10, Doc. 54-3.)   Eventually, Mr. Armijo was jailed for an unspecified period of time.   (Pacheco Dep. 62:2-9, Doc. 48-9.)

Over the course of the two-month delayed investigation, Detective Pacheco's understanding of the facts changed.   Initially, she assumed the squash blossom necklace was part of Pawn City's inventory.   (Pacheco Dep. 71:24-25, Doc. 49-2.)   Before Detective Pacheco filed

4

charges against Mr. Armijo, however, she knew that Mr. Armijo personally purchased the squash blossom necklace and that it was not Pawn City's property.  (*Id.* 70:16-25.)  Still, Detective Pacheco defines the problem as one of movement: [w]hen the item's on hold, I know it can't be removed."  (*Id.* 55:20-21.)  Specifically, Defendant Pacheco believes that Mr. Armijo engaged in criminal conduct "whenever he quit Pawn City and took the property from Pawn City . . . that was on hold."  (*Id.* 70:8-15.)  Instead of taking the necklace home, Detective Pacheco thinks that Mr. Armijo should have called her to ask permission.  (Pacheco Dep. 60:2-17, Doc. 48-9.)  On August 7, 2013, Detective Pacheco charged Mr. Armijo with receiving stolen property worth more than $500.00 and less than $2,500.00, a fourth degree felony.  *State of New Mexico v. Armijo*, No. T-4-CR-2013013819 (N.M. Metro. Ct. Aug. 7, 2013).

Eventually, prosecutors dropped the charges against Mr. Armijo.  *State of New Mexico v. Armijo*, No. T-4-CR-2013013819 (N.M. Metro. Ct. Oct. 3, 2013) (filing *nolle prosequi*).  Mr. Armijo filed a suit against Detective Pacheco in state court with the Second Judicial District Court, Bernalillo County, New Mexico.  (Compl., Doc. 1-1.)  Detective Pacheco removed the case. (Doc. 1.)  Eight months later, Detective Pacheco moved for summary judgment on all of Mr. Armijo's claims.   In turn, Mr. Armijo filed a cross motion, seeking partial summary judgment in his favor on three claims.   The Court evaluates both motions simultaneously.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A fact is "material" if it could influence the determination of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party.   *Id.*   If there is a genuine dispute of material

fact, then the "facts must be viewed in the light most favorable to the nonmoving party . . . ." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). The fact that the parties filed cross motions for summary judgment does not change the analysis. *See Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

## III. DISCUSSION

Currently, Mr. Armijo brings five constitutional claims: unlawful arrest, unlawful seizure of his person, unlawful seizure of his property, malicious prosecution, and a violation of his procedural due process rights. Mr. Armijo voluntarily dismissed Counts II, IV, and V. In her motion for summary judgment, Detective Pacheco invokes qualified immunity on Mr. Armijo's constitutional claims. (Doc. 48.) In his cross motion for summary judgment, Mr. Armijo seeks partial summary judgment in his favor on three claims: unlawful arrest, unlawful seizure of his property, and violation of procedural due process. (Doc. 49.) Separately, Mr. Armijo asserts three state law claims: malicious abuse of process, false imprisonment, and battery. Seeking summary judgment, Detective Pacheco claims that Mr. Armijo's state law claims fail as a matter of law. (*Id.*) The Court considers the merit of each claim below.

### A. Constitutional Claims

Invoking the doctrine of qualified immunity, Detective Pacheco seeks summary judgment on Mr. Armijo's constitutional claims. (Doc. 48.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To determine whether qualified immunity applies, courts consider two questions. *See id.* at 236

6

(explicating the two-prong inquiry for qualified immunity).   First, did the defendant's actions violate the plaintiff's constitutional rights?   *See id.*   Second, was the complained-of constitutional violation "clearly established" such that a reasonable officer would have known that his conduct was unlawful?   *See Saucier v. Katz*, 533 U.S. 194, 202 (2001).

A plaintiff has the burden to show that the defendant is not protected by qualified immunity.   *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007).   Notwithstanding this burden, when considering qualified immunity on summary judgment, courts must take care to view the facts in a light most favorable to the plaintiff.   *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).   The defendant retains the burden to show that there are no disputed material facts.   *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) ("[Defendant . . . must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.").

### 1. *Unlawful Arrest*

Mr. Armijo contends that Detective Pacheco unlawfully arrested him in contravention of his Fourth Amendment rights.   In response, Detective Pacheco claims an absolute defense: that she had probable cause to arrest Mr. Armijo.   *See Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) ("The constitutional validity of a warrantless arrest depends upon whether the arresting officer had probable cause.").   "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed . . . an offense."   *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).   In her briefing, Detective Pacheco claims she had probable cause for two separate crimes.

First and foremost, Detective Pacheco avers that she had probable cause to believe that Mr. Armijo received stolen property.   (Doc. 48 at 10.)   For the purposes of this action, the Court will

assume that the squash blossom necklace was stolen.   Under New Mexico law, the crime of receiving stolen property "means intentionally to receive, retain or dispose of stolen property knowing that it has been stolen or believing it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner."   N.M. Stat. Ann. § 30-16-11(A). To have committed this crime, Mr. Armijo would have needed to (a) receive, (b) retain, or (c) dispose of the necklace knowing it had been stolen.   No one contends that Mr. Armijo knew that the necklace was stolen when he first received it; he purchased the necklace in a legal transaction. (Pacheco Dep. 49:6-14, Doc. 49-2.)   Nor does anyone argue that Mr. Armijo disposed of the necklace, except to turn it over to the police.   By process of elimination, Detective Pacheco charged Mr. Armijo with option (b): retaining stolen property.

Detective Pacheco theorizes that Mr. Armijo committed the crime "whenever he quit Pawn City and took the property from Pawn City . . . that was on hold."   (Pacheco Dep. 70:8-15, Doc. 49-2.)   The legitimacy of Detective Pacheco's theory turns on the power of the so-called police hold.   For the authority to initiate a police hold, Detective Pacheco points to Albuquerque's "Pawnbroker Ordinance."   *See* Albuquerque, N.M. Ordinances §§ 13–6–1, *et seq.*   In particular, Detective Pacheco relies on the section related to inspections:

> The reports and records of the permit holder required by this article as well as every item received in pawn, pledge or on consignment or through purchase or exchange shall be available for inspection by the Mayor, the Chief of Police or any sworn member of the Albuquerque Police Department at all reasonable times.

Albuquerque, N.M. Ordinances § 13–6–11.[1]   When asked to define a police hold, Detective Pacheco clarifies that she intends the possessor to maintain custody and control over the property.

---

[1] According to its terms, this ordinance only applies to permit-holding pawnbrokers.   When Mr. Armijo was selling the necklace, he was not acting as an agent of the pawn shop.   Yet, even if Detective Pacheco is incorrect in believing that this ordinance applied to Mr. Armijo, that does not necessarily defeat probable cause.   *Cf.* "Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law.   The officer may be reasonably mistaken on either ground."   *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014).

(Pacheco Dep. 76:11-13, Doc. 49-2.)   She further claims that police holds can last indefinitely (Pacheco Dep. 29:8-12, Doc. 56-1), a specious legal proposition.

When Detective Pacheco initiated the police hold, she assumed the necklace was part of Pawn City's inventory.  (Pacheco Dep. 71:24-25, Doc. 49-2.)   She further assumed that Pawn City would store the squash blossom necklace in a back room until she was ready to investigate the case.  (Pacheco Dep. 44:12-45:2, Doc. 48-9.)   When Detective Pacheco later learned that Mr. Armijo personally purchased the squash blossom necklace (Pacheco Dep. 70:16-25, Doc. 49-2), she did not change her assumptions about the police hold process.   Detective Pacheco still believed that Mr. Armijo needed to keep the necklace at Pawn City and needed to call her before moving the squash blossom necklace.   (Pacheco Dep. 60:2-17, Doc. 48-9.)

On a surface level, Mr. Armijo did retain stolen property: Mr. Armijo continued to maintain possession of the necklace after he knew it was being investigated as stolen property. Yet Detective Pacheco has not provided legal support to show that Mr. Armijo's retention of the property violated the law.   In the common law, possessors of property act within their rights when they doubt another's claim to rightful ownership over that property.   Restatement (Second) of Torts § 240 (1965) ( "[O]ne in possession of a chattel who is in reasonable doubt as to the right of a claimant to its immediate possession does not become a converter by making a qualified refusal to surrender the chattel to the claimant for the purpose of affording a reasonable opportunity to inquire into such right.").   At the time, Mr. Armijo had a good faith reason to doubt whether Ms. Larsen rightfully owned the squash blossom necklace.   (Armijo Dep. 58:11-59:8, Doc. 48-1.)

Moreover, Detective Pacheco ordered Mr. Armijo to maintain custody over the squash blossom necklace.   And Mr. Armijo did just that.   He stopped attempting to sell the necklace and put it in his employer's safe.   After more than a month had passed and shortly before quitting his

job, Mr. Armijo took the necklace home.   Although Detective Pacheco wanted Mr. Armijo to keep the necklace at Pawn City, it makes little sense for Mr. Armijo to leave his property with a former employer after quitting.   Similarly, Detective Pacheco invented a legal duty by requiring Mr. Armijo to call her and check on the police investigation.   A jury could find such a proposition to be, in short, unreasonable.   In order to be probable, the arresting officer's understanding of the facts and law must be *reasonable*.   *Olsen*, 312 F.3d at 1312.   Although Detective Pacheco thought, and still believes, that Mr. Armijo's conduct was unlawful, Detective Pacheco's subjective understandings are irrelevant.   *Heien*, 135 S. Ct. at 539 (explaining that the Fourth Amendment inquiry only examines objective inferences, not subjective understandings).   Making permissible inferences in favor of Mr. Armijo's version of the facts, Mr. Armijo never disobeyed a police order: he merely disobeyed an officer's undefined expectation.

In the briefing, Detective Pacheco argues that she had probable cause for a second crime: operating as a pawnbroker without a license.   *See* Albuquerque, N.M. Ordinances § 13–6–4 (requiring pawn brokers to obtain a permit).   Although Detective Pacheco did not charge Mr. Armijo with this crime, "the probable cause inquiry is not restricted to a particular offense, but rather requires merely that officers had reason to believe that a crime—any crime—occurred." *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009).   Detective Pacheco did not offer any evidence that she perceived this violation at the time of Mr. Armijo's arrest.   Only the briefing argues that Mr. Armijo could have been arrested for pawning items without a license. Under the Ordinance, a pawnbroker is defined, in part, a person or company who "[e]ngages in the business of purchasing items of gold, silver, platinum or other precious metals or gems and reselling the product."   Albuquerque, N.M. Ordinances § 13–6–3.

Applying this definition of a pawnbroker to Mr. Armijo is unreasonable for two reasons.

First, the phrase "engages in the business of" suggests repeated dealings, not one-time occurrences.   Detective Pacheco had evidence that Mr. Armijo tried to resell one necklace, but no evidence that he had a pattern of engaging in this type of business.   Second, believing that Mr. Armijo both violated the police hold and was an unlicensed pawnbroker requires paradoxical thought.    The police hold ordinance only pertains to permit-holding pawnbrokers.   *See* Albuquerque, N.M. Ordinances § 13–6–11.   In order to be subject to that provision, Detective Pacheco must have thought that Mr. Armijo was a permit-holding pawnbroker or agent.   She could not simultaneously have thought that Mr. Armijo was an unpermitted pawnbroker in violation of section 13–6–3 and a permitted pawnbroker subject to section 13-6-11.   Probable cause must be based on "reasonably trustworthy information" and the facts "within the arresting officer's knowledge" at the time of the arrest.   *Olsen*, 312 F.3d at 1312.   For that reason, Detective Pacheco could not have reasonably believed she had probable cause for this crime.

Viewing the facts in the light most favorable to Mr. Armijo, Detective Pacheco lacked probable cause to believe that Detective Pacheco received stolen property or was illegally operating as a pawnbroker.   Lacking probable cause, Detective Pacheco violated Mr. Armijo's Fourth Amendment rights when she arrested him.   Detective Pacheco concedes that the probable cause requirement is clearly established.   (Doc. 48 at 12.)   Because the probable cause requirement for warrantless arrests is clearly established, the Court denies Detective Pacheco's motion for summary judgment on the basis of qualified immunity.

The Court also denies Mr. Armijo's motion for summary judgment on this cause of action. There are still genuine disputes of material fact pertaining to the probable cause evaluation.   Were Detective Pacheco's "police hold" instructions sufficiently clear?   Was it reasonable for Detective Pacheco to think Mr. Armijo violated the law by moving the necklace?   Was it

reasonable for Mr. Armijo to move the necklace without seeking Detective Pacheco's permission? These questions form the types of common-sense, material disputes that juries are well-equipped to evaluate.  *See Webb v. Allstate Life Ins. Co.*, 536 F.2d 336, 339 (10th Cir. 1976) ("Where different ultimate inferences may properly be drawn, the case is not one for summary judgment."). Therefore, Mr. Armijo's motion for summary judgment on this claim is denied.

### 2.  *Unlawful Seizure of Person*

Mr. Armijo next challenges that Detective Pacheco unreasonably seized him when she ordered him to appear at the police station.  (Doc. 54 at 7.)  This allegation is distinct from the unlawful arrest allegation, because it refers to a different stage of Mr. Armijo's and Detective Pacheco's interaction.  "A reviewing court must analyze each stage of [a civilian-police] encounter, ensuring that the requisite level of suspicion or cause is present at each stage."  *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996).

To prevail, Mr. Armijo must show (1) that he was seized within the meaning of the law; (2) that the seizure was unlawful; and, in order to defeat qualified immunity, (3) show that the law was clearly established.  According to the record, Detective Pacheco warned Mr. Armijo over the phone that if he did not come to the police station and turn in the necklace, she would issue an arrest warrant for him.  (Armijo Dep. 56:2-12, 57:14-17, Doc. 48-1.)  Later, Mr. Armijo's supervisor contacted Detective Pacheco and attempted to renegotiate the terms of the property transfer.  (*Id.* 65:21-66:2.)  Detective Pacheco reiterated that she would arrest Mr. Armijo if he did not bring the necklace to the police station as previously agreed.  (*Id.* 68:19-22.)  As requested, Mr. Armijo arrived at the downtown police station the next morning.  (*Id.* 62:13-22.)

A Fourth Amendment seizure occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person

that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991).   At first blush, Mr. Armijo's choice to appear at the police station sounds voluntary and consensual.   "[C]onsensual encounters . . . do not implicate the Fourth Amendment."   *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996) (collecting cases).   However, coercion can turn an otherwise consensual encounter into a seizure.

To effect a seizure, an officer does not need to physically restrain a citizen or use any physical force.   *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("An arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority.").   The court for the District of New Mexico has previously found that a police officer's phone call "could constitute a seizure for the purposes of the Fourth Amendment."   *Smith v. Kenny*, 678 F. Supp. 2d 1124, 1173 (D.N.M. 2009).   In *Smith*, a police officer called a citizen at home around 2:00 a.m. and ordered him to exit the house.   *Id.*   Armed police officers were waiting outside to arrest the citizen.   *Id.*   After surveying Tenth Circuit precedent regarding voluntariness and police authority, the district court determined that the phone call could be considered a seizure.   *Id.*   The circumstances in this case give rise to a similar inference.

A reasonable factfinder could determine that Detective Pacheco seized Mr. Armijo when she ordered him over the phone, on two separate occasions, to appear at the police station or risk arrest.   An encounter is only consensual if it is voluntary.   *See Bostick*, 501 U.S. at 438. "'Consent' that is the product of official intimidation or harassment is not consent at all."   *Id.* Here, Detective Pacheco twice threatened Mr. Armijo with arrest if he did not turn in the necklace. (Armijo Dep. 57:14-17, 68:19-22, Doc. 48-1.)   The threat of arrest is a clear show of an officer's official authority, and is sufficient to effect a seizure when the arrestee submits to such authority. *See Hodari D.*, 499 U.S. at 626.   Ultimately, Mr. Armijo submitted to this authority when he

appeared at the police station at the appointed time, where he was then arrested.   (Armijo Dep. 62:13-22, Doc. 48-1.)   Encounters remain consensual "as long as the police do not convey a message that compliance with their requests is required."   *Bostick*, 501 U.S. at 435.   With the two threatening phone calls, Detective Pacheco crystalized the message that Mr. Armijo had no choice but to comply with her demand.   On that basis, viewing the facts in a light most favorable to Mr. Armijo, a jury could find that the phone calls constituted a seizure of Mr. Armijo's person.

"[S]eizures that resemble formal arrests must be supported by probable cause."   *United States v. Perdue*, 8 F.3d 1455, 1461 (10th Cir. 1993).   If Detective Pacheco had probable cause to arrest Mr. Armijo, then the seizure would be lawful.   *See Karr*, 774 F.2d at 1031.   However, as discussed above, there is a genuine dispute over whether Detective Pacheco had probable cause. Mr. Armijo has shown a possible constitutional violation, overcoming the first qualified immunity hurdle.   He can also overcome the second hurdle.

Detective Pacheco violated clearly established law when she coerced Mr. Armijo into submitting to a warrantless seizure unsupported by probable cause.   It is clearly established that police officers cannot circumvent the warrant requirement by coercing citizens into consenting to searches or seizures.   *See Bostick*, 501 U.S. at 438 ("'Consent' that is the product of official intimidation or harassment is not consent at all."); *United States v. Reeves*, 524 F.3d 1161, 1167 (10th Cir. 2008) ("Opening the door to one's home is not voluntary if ordered to do so under color of authority.").   Detective Pacheco preplanned Mr. Armijo's arrest, but instead of seeking a warrant through established procedures, she manipulated Mr. Armijo into coming to the police station.   Formal seizures, such as the one Detective Pacheco arranged, require probable cause. *See Perdue*, 8 F.3d at 1461.   Detective Pacheco knows the probable cause requirement.   (Doc. 48 at 12.)   Although the facts of this case do not perfectly align with Tenth Circuit precedent,

14

"officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  The law clearly establishes that seizures require warrants and probable cause or *voluntary* consent.  Given this framework, Detective Pacheco had notice that her conduct would violate constitutional law.

Viewing the facts in a light most favorable to Mr. Armijo, a jury could find that Detective Pacheco unlawfully seized Mr. Armijo's person by ordering him to appear at the police station under threat of arrest, even though she had no probable cause to arrest him.   Additionally, the Court finds that this conduct, as described, violates clearly established law.   Accordingly, the Court denies Detective Pacheco qualified immunity on this claim.

### 3.   *Unlawful Seizure of Property*

When Detective Pacheco ordered Mr. Armijo to turn over the necklace without first seeking a warrant, Mr. Armijo argues that she violated his Fourth Amendment right to be free from unreasonable property seizures.   (Doc. 49 at 4-5.)   Detective Pacheco appears to concede that she seized the necklace, but argues that Mr. Armijo had no property interest in the necklace and therefore cannot contest the seizure.   (Doc. 55 at 9-10.)   Alternatively, Detective Pacheco alleges that she had probable cause to justify the seizure.   (Doc. 48 at 11.)

Mr. Armijo had a protectable property interest in the squash blossom necklace within the meaning of the Fourth Amendment.   Detective Pacheco contends that Mr. Armijo cannot bring this claim based because Ms. Larsen was the true necklace owner.   (Doc. 55 at 9-10.)   Ms. Larsen may have superior title.   However, that does not bar Mr. Armijo's claim.   *Cf. Dunken v. Guess*, 56 P.2d 1123, 1125 (N.M. 1936) (explaining that a plaintiff may have a valid claim against a defendant, even if his property interest is not superior against a third party).   The Fourth Amendment protects against government "interference with an individual's possessory interests in

15

that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).   The Supreme Court does not require an unqualified right to property.   Rather, a petitioner only needs a "possessory interest" in the property.   Mr. Armijo had such an interest in the squash blossom necklace.

"Proprietary interest" means "any right of ownership" over property "which would entitle the actor to retain its possession permanently, indefinitely, or for a period of time.   It is to be distinguished from a mere bailment at will, in which the actor holds only possession for another." Restatement (Second) of Torts § 229 cmt. a (1965).   Mr. Armijo was not a bailee of the necklace. He bought the necklace in good faith for value.   This transaction gave him not only possession of the necklace, but a proprietary interest in it.   *See Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 853 (10th Cir. 1993) (finding that a pawnbroker who unknowingly purchased stolen property "had a constitutionally protected interest" in the property).   The fact that Ms. Larsen may have a superior claim to the necklace does not erase Mr. Armijo's interest in the necklace.   Both Mr. Armijo and Detective Pacheco argue over the relative merit of Mr. Armijo's claim to the necklace versus Ms. Larsen's claim to the necklace.   However, that question is irrelevant to the Court's inquiry.   The relevant inquiry here is whether Mr. Armijo had a possessory interest protected by the Constitution.   The Court finds that he did.

Next, the Court must determine whether there was a seizure of the property within the meaning of the Fourth Amendment.   A seizure occurs "when there is some meaningful interference" with an individual's property interest.   *Jacobsen*, 466 U.S. at 113.   "[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place."   *Soldal v. Cook Cnty.*, 506 U.S. 56, 68-69 (1992).   On the other hand, no seizure occurs when possessors voluntarily relinquish their interests to the government. *See Maryland v. Macon*, 472 U.S. 463, 469 (1985) (finding no seizure where petitioner

"voluntarily transferred any possessory interest he may have had" to the investigator).

Here, the circumstances surrounding the necklace seizure are identical to the facts supporting Mr. Armijo's "seizure of his person" claim: Mr. Armijo went to the police station with the necklace only after Detective Pacheco twice threatened to arrest him.   Under these facts, a jury could find that Mr. Armijo's consent was not voluntary.   *See Bostick*, 501 U.S. at 438 ("'Consent' that is the product of official intimidation or harassment is not consent at all.").   Therefore, a jury could determine that Detective Pacheco's acts constituted a seizure.

If an officer has probable cause to seize an item, the seizure does not violate the Fourth Amendment.   *See Soldal*, 506 U.S. at 66 ("[I]n the absence of consent or a warrant permitting the seizure of the items in question, such seizures can be justified only if they meet the probable-cause standard.").   As explained above, there is a genuine dispute regarding whether Detective Pacheco had probable cause to believe that Mr. Armijo committed the crime of receiving stolen property. Alternatively, based on the facts provided, the Court is willing to assume that Detective Pacheco had probable cause to believe that the squash blossom necklace was evidence of some crime, namely the theft of Ms. Larsen's property.   Mr. Armijo was in no way involved in that crime and Detective Pacheco knew that before she seized the necklace.   (Pacheco Dep. 49:6-14, Doc. 49-2.)

Probable cause of an unrelated crime does not support a seizure of Mr. Armijo's property. Mr. Armijo had the squash blossom necklace in his home.   Were it not for Detective Pacheco's arguably coercive phone calls, the necklace would have remained at Mr. Armijo's residence. Detective Pacheco did not have sufficient probable cause to enter Mr. Armijo's home to seize the necklace based on the prior robbery.   "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched."   *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) (quoting *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir.

17

1990).   Although Detective Pacheco could connect the robbery to the necklace, she could not have connected the robbery to Mr. Armijo's home.   Without that nexus, Detective Pacheco lacked probable cause to search Mr. Armijo's home based on the robbery.

The Court recognizes that law enforcement has an interest in seizing evidence of crimes. *See Soldal*, 506 U.S. at 68-69 (discussing police power to investigate crime and collect evidence). That interest, however, must be balanced against citizens' possessory interests.   *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (holding that Fourth Amendment jurisprudence requires a balancing of individual and state interests).   The Fourth Amendment protects against "intrusion on the people's security from governmental interference." *See Soldal*, 506 U.S. at 69.   The right is equally strong when the government seeks to collect evidence of a crime from an innocent party. *See id.* ("[I]t would be anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior."). Detective Pacheco offered no reason why she could not have sought a warrant or otherwise taken hold of the property through less intrusive means.

Viewing the facts in a light most favorable to Mr. Armijo, Detective Pacheco violated Mr. Armijo's Fourth Amendment rights when she ordered him, under threat, to produce the squash blossom necklace at the police station.   The requirement of probable cause before seizing an item is well-established.   *See Soldal*, 506 U.S. at 66.   Because Mr. Armijo showed a possible violation of a clearly-established constitutional principle, Detective Pacheco cannot invoke qualified immunity on this claim.   Therefore, Detective Pacheco's motion for summary judgment on this claim is denied.

Mr. Armijo moved for summary judgment in his favor on this claim.   However, there are remaining factual disputes: Did Mr. Armijo consent to the seizure or was his consent coerced?

Was Detective Pacheco's belief that she had probable cause reasonable?   Because there are material disputes of fact, the Court cannot grant summary judgment.   Mr. Armijo's motion for summary judgment on this claim is denied.

### 4. Malicious Prosecution

The constitutional tort of malicious prosecution "remedies detention . . . by *wrongful institution* of legal process."   *Wallace v. Kato*, 549 U.S. 384, 390 (2007).   False arrest claims and malicious prosecution claims both stem from unlawful seizures of a person.   The defining distinction between the two claims is the initiation of legal process.   *See Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013).   False arrests occur when an officer unreasonably seizes a suspect without a warrant.   *See id.*   In contrast, malicious prosecutions occur when a state official makes an unreasonable seizure buttressed by legal process.   *See id.*

In order to distinguish this claim from his false arrest claim, Mr. Armijo needs to explain how his constitutional rights were violated after the legal process was formally initiated.   *See Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008) ("Unlike a false arrest or false imprisonment claim, malicious prosecution concerns detention only after the institution of legal process.").   For example, Mr. Armijo could have shown that his rights were violated after he was "bound over by a magistrate or arraigned on charges."   *Wallace*, 549 U.S. at 389.   In his brief, Mr. Armijo complains that Detective Pacheco maliciously prosecuted him by detaining him for two to three hours before transporting him to the jail.   (Doc. 54 at 15.)   Yet, the detention occurred after a warrantless arrest and before any formal legal process was triggered.   Mr. Armijo offered no evidence to show what happened after the legal process was initiated.

In short, Mr. Armijo made no effort to distinguish this claim from his unlawful arrest claim.   Because there is insufficient evidence to support this claim, the Court dismisses Mr.

Armijo's malicious prosecution claim as a matter of law.

### 5. *Violation of Procedural Due Process*

The Fourteenth Amendment protects individuals against deprivations of property interests without due process of law.   U.S. Const. amend. XIV, § 1.   To determine if an individual was denied procedural due process, courts engage in a two-step inquiry: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."   *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011).

Mr. Armijo only ambiguously defined the circumstances that give rise to his due process claim.   The Court can surmise two possible factual scenarios: the seizure of the necklace without due process of law and the disposition of the necklace without due process of law.   *See Soldal*, 506 U.S. at 60 & n.5 (discussing that the plaintiffs could have challenged the seizure of their property under the procedural clause of the Fourteenth Amendment); *Wolfenbarger v. Williams*, 774 F.2d 358, 363 (10th Cir. 1985) (discussing a petitioner's right to "a hearing after the police initially take possession of property and before they release it").   These two stages are distinct.

If Mr. Armijo brings a claim challenging the seizure of his property under the due process clause, the claim is doomed to fail.   Adequate post-deprivation remedies, such as state tort claims, can satisfy due process requirements.   *Myers*, 738 F.3d at 1193 (citing *Becker v. Kroll*, 494 F.3d 904, 921 (10th Cir. 2007)).   Specifically, adequate post-deprivation remedies under state law provide sufficient due process for property deprivations during a police search and seizure. *Hudson v. Palmer*, 468 U.S. 517, 518 (1984).   Here, New Mexico law provides adequate post-deprivation remedies.   Under state law, Mr. Armijo could have brought an unlawful seizure challenge under the New Mexico Constitution, *State v. Bomboy*, 184 P.3d 1045, 1049 (N.M.

2008), or a replevin action, *Edmonds v. Martinez*, 215 P.3d 62, 64 (N.M. Ct. App. 2009).   Due to

adequate post-deprivation remedies, this theory must fail.   Accordingly, the Court construes Mr.

Armijo's due process claim to challenge the disposition of the necklace from police custody.

Detective Pacheco raises two defenses to Mr. Armijo's due process claim.   First,

Detective Pacheco asserts that the claim fails because Mr. Armijo was not the lawful owner of the

necklace.   (Doc. 48 at 16.)   Similar to the Fourth Amendment, however, the due process clause

of the Fourteenth Amendment protects property *interests*.   *See Cleveland Bd. of Educ. v.

Loudermill*, 470 U.S. 532, 538 (1985) (explaining that the Due Process Clause protects property

interests).   As explained above, Mr. Armijo had a property interest in the squash blossom

necklace.   He had a right to assert his interest in the necklace even if Ms. Larsen had a superior

title.   *See Winters*, 4 F.3d at 856 ("Appellant must be given the opportunity to present her case for

ownership on the merits regardless of the likelihood for success").   Second, Detective Pacheco

claims that Mr. Armijo received adequate process through state law post-deprivation remedies.

(Doc. 48 at 17.)   In particular, Detective Pacheco points to New Mexico's criminal procedure

rules which allow for victim restitution.   *See* N.M. Stat. Ann. § 31-17-1.   This statute, however,

is insufficient to address the alleged procedural violation.

"[O]rdinarily one who has a protected property interest is entitled to some sort of hearing

before the government acts to impair that interest . . . ."   *Camuglia v. City of Albuquerque*, 448

F.3d 1214, 1220 (10th Cir. 2006).   The Tenth Circuit has twice held that local governments need

to hold a hearing to identify contested claims of ownership over stolen property before releasing

the property from custody.   *See Wolfenbarger*, 774 F.2d at 365; *Winters*, 4 F.3d at 857.

Defendant claims that these cases are inapposite because they were decided under Oklahoma law.

(Doc. 55 at 14.)   While Oklahoma law did define the plaintiffs' property interests in those cases,

the Circuit's statement of constitutional principles are binding federal law. "[T]he question of whether a state has afforded sufficient process to protect a constitutional right is not a question of state law." *Guttman v. Khalsa*, 669 F.3d 1101, 1115 (10th Cir. 2012).

Under Tenth Circuit law, local governments must hold a pre-deprivation hearing before disposing of property with contested ownership. In *Wolfenbarger*, the Tenth Circuit considered the claim of a pawnbroker who, in good faith, took a pledge on stolen goods. 774 F.2d at 359. A police officer seized the stolen goods from the pawn shop and returned the property to the original owner. *Id.* at 360. The Circuit found that the pawnbroker "had a constitutionally protected property interest . . . sufficient to support a claim of violation of due process." *Id.* at 362. Reasoning that the state had no interest in disposing of the property speedily, the Tenth Circuit determined that the police department was in a position to provide a pre-deprivation process, instead of a post-deprivation process. *Id.* at 363-64. Eight years later, the Tenth Circuit affirmed that a local government's disposition of stolen property without a pre-deprivation hearing violates good faith buyers' due process rights. *Winters*, 4 F.3d at 857. This law is clearly established in the Tenth Circuit.

Based on the limited facts before the Court, Mr. Armijo may have a viable claim that the disposition of the squash blossom necklace violated his due process rights. Based on the record, the Court infers that Ms. Larsen is currently in possession of the squash blossom necklace. (Larsen Dep. 29:7-24.) The Court, however, is unaware of how Ms. Larsen regained possession of the necklace. If Detective Pacheco took it upon herself to dispose of the necklace, in derogation of Mr. Armijo's interest, she may have violated Mr. Armijo's due process rights. Because there are unresolved issues of fact going to Detective Pacheco's claim of qualified immunity, the Court denies Detective's claim of immunity at this time.

The Court does not have enough facts to determine the issue at this time.   For example, the parties have not explained whether New Mexico has a process for determining ownership of property in police custody where multiple people claim ownership.   Nor have the parties explained the procedure that Detective Pacheco followed before releasing the necklace from police custody.   Because of these unresolved issues, the Court declines to grant summary judgment to either party at this time.   The motions for summary judgment on this claim are denied.

**B.  State Law Claims**

Mr. Armijo asserts three state law claims: malicious abuse of process, false imprisonment, and battery.   Generally, New Mexico public employees are immune from tort liability.   N.M. Stat. Ann. § 41-4-2.   Pursuant to statute, New Mexico waives immunity for police officers who commit certain torts.   N.M. Stat. Ann. § 41-4-12.   All three causes of action Mr. Armijo asserts are among the enumerated torts in Section 41-4-12.   Thus, the New Mexico Tort Claims Act does not bar Mr. Armijo's claims.   The Court considers each claim below.

***1.  Malicious Abuse of Process***

"One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."   *Richardson v. Rutherford*, 787 P.2d 414, 420 (1990) (quoting Restatement (Second) of Torts § 682 (1977)).   The elements of malicious abuse of process are (1) improperly using a judicial proceeding; (2) an illegitimate, primary motive; and (3) damages. *Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009).   New Mexico recognizes two forms of malicious abuse of process.   *Id.*   Under the first theory, a defendant charges the plaintiff without probable cause.   *Id.*   For the second theory, the defendant's use of the legal system encompassed "an irregularity or impropriety suggesting extortion, delay, or harassment."   *Id.*

Mr. Armijo premises his abuse of process claim on the first theory: that Detective Pacheco pressed charges against him without probable cause.  (Compl. ¶¶ 87-90.)  If a defendant can show that she had probable cause, it is "an absolute defense to a malicious abuse of process claim founded on lack of probable cause."  *Fleetwood Retail Corp. v. LeDoux*, 164 P.3d 31, 37 (N.M. 2007).  "[T]he filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive."  *DeVaney v. Thriftway Marketing Corp.*, 953 P.2d 277, 285 (N.M. 1997).  As explained above, there is a genuine dispute of fact regarding whether Detective Pacheco had probable cause to arrest Mr. Armijo.   Accordingly, the Court denies Detective Pacheco's motion for summary judgment on this claim.

Separately, under "the procedural impropriety theory," a plaintiff could show that the defendant "perverted" the legal process "to accomplish an ulterior purpose," even if the complaint was premised on probable cause.  *Richardson*, 787 P.2d at 420-21.   Examples of so-called perversions include acts "suggesting extortion, delay, or harassment."  *Fleetwood Retail Corp.*, 164 N.M. at 36.   Mr. Armijo did not offer any theories or evidence to support this type of claim.

Because there is a genuine dispute regarding probable cause, Mr. Armijo can proceed with this malicious abuse of process claim premised on the lack of probable cause.   Detective Pacheco's motion for summary judgment on this claim is denied.

### 2. *False Imprisonment*

Under New Mexico law, "[f]alse imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so."  *Romero v. Sanchez*, 895 P.2d 212, 215 (N.M. 1995) (quoting N.M. Stat. Ann. § 30-4-3).   As long as an officer could have reasonably believed that a detention was appropriate, a

24

claim of false imprisonment will not lie.   *Id.* at 215-16.   A "good faith and reasonable belief in the lawfulness of the action taken are defenses to a false arrest claim."   *Perea v. Stout*, 613 P.2d 1034, 1039 (N.M. Ct. App. 1980) (citing *Steinbaugh v. Payless Drug Store, Inc.*, 401 P.2d 104, 105-06 (N.M. 1965)); *see also Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) ("A defendant possessed of a good faith and reasonable belief in the lawfulness of the action is not liable for false imprisonment or false arrest.").

As discussed above, the Court determined that there was a genuine dispute of fact regarding the reasonableness of Detective Pacheco's arrest and detention of Mr. Armijo. Importantly, the elements of false arrest require that Detective Pacheco knew that she lacked lawful authority to detain Mr. Armijo.   This requirement may create a higher burden than in the false arrest context.   The Court has not found a New Mexico case that addresses whether an officer could lack probable cause under an objective standard, but still hold a good faith belief under a subjective standard.   This distinction may be unimportant.   At this stage, the existence of probable cause is a disputed fact that a jury must determine.   *See Stienbaugh*, 401 P.2d at 106 (explaining that "if the evidence is conflicting, [probable cause] is a mixed question of law and fact" that a jury must determine).   For that reason, Detective Pacheco's motion for summary judgment is denied.

### 3.   Battery

Battery is an "act[] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact" when "an offensive contact with the person of the other directly or indirectly results."   *State v. Ortega*, 827 P.2d 152, 155 (N.M. 1992) (citing Restatement (Second) Torts § 18).   Police officers, when performing their duties, are afforded some deference in their use of force.   *See State v. Gonzales*, 642 P.2d 210, 213

(N.M. Ct. App 1982).   "Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests or to preserve the peace.   When acting in good faith, the courts will afford them the utmost protection . . . ."   *Id.* (quoting *Mead v. O'Connor*, 344 P.2d 478, 480-81 (N.M. 1959)).   In order to overcome a police officer's immunity under the New Mexico Tort Claims Act, New Mexico courts require a plaintiff to show that the officer's alleged battery manifested an intent "to engage in unlawful conduct that invades the protected interests of others." *Caillouette v. Hercules, Inc.*, 827 P.2d 1306, 1310-11 (N.M. Ct. App. 1992) (quoting *California First Bank v. State of New Mexico*, 801 P.2d 646, 656 n.6 (N.M. 1990)).

The essence of Mr. Armijo's battery claim appears to be that he was handcuffed.   (Compl. ¶¶ 94-97.)   In fact, a second officer, not Detective Pacheco, handcuffed Mr. Armijo.   (Armijo Dep. 63:4-64:8, Doc. 48-1.)   Although Mr. Armijo questions the lawfulness of Detective Pacheco's arrest, he never claims that she was acting in bad faith or beyond the scope of her duties. Mr. Armijo did not respond to the motion for summary judgment with any evidence supporting his claim for battery.   (Doc. 54 at 16.)   Based on the record before it, the Court finds that no reasonable juror could find Detective Pacheco liable for battery.   *Accord Realivasquez v. City of Albuquerque*, No. 03-cv-15 MCA/KBM, slip op. at 9 (D.N.M. Mar. 8, 2004) ("Police officers are not liable for battery if they acted in good faith and did not use more force than reasonably necessary to preserve the peace or effect an arrest.").   The Court grants Detective Pacheco's motion for summary judgment on this claim.

## IV. CONCLUSION

Mr. Armijo pursued five constitutional claims.   First, the Court denied Detective Pacheco qualified immunity on the unlawful arrest claim.   Genuine disputes of fact regarding whether Detective Pacheco had probable cause to arrest Mr. Armijo prevent summary judgment on both

Detective Pacheco's motion and Mr. Armijo's motion.   Second, the Court denied Detective Pacheco's invocation of qualified immunity on the unlawful seizure of person claim, based on questions going to consent and probable cause.   Third, the Court denied Detective Pacheco qualified immunity on the unlawful seizure of property claim and denied Mr. Armijo's motion for summary judgment on the same claim.   Fourth, the Court granted summary judgment on Mr. Armijo's malicious prosecution claim.   Fifth, the Court denied Detective Pacheco qualified immunity on Mr. Armijo's procedural due process claim.   Because the factual issues on the due process claim are undeveloped, the Court denied both motions for summary judgment.

Mr. Armijo also asserted three state law claims.   The Court ruled that questions relating to probable cause barred summary judgment on the malicious abuse of process claim and on the false imprisonment claim.   The Court granted Detective Pacheco's request for summary judgment on the battery claim.

**THEREFORE,**

**IT IS ORDERED** that:

(1) Defendant Valerie Pacheco's Motion for Summary Judgment (Doc. 48) is **GRANTED** in part and **DENIED** in part;

(2) Plaintiff's Motion for Partial Summary Judgment (Doc. 49) is **DENIED**; and

(3) Counts II, IV, and V of the Complaint are **DISMISSED** with prejudice.

**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE